When you're ready. Thank you, and good morning, Your Honors. I would like to reserve four minutes for rebuttal. May it please the Court, my name is Rayon Rolston, and I'm from the Consumer Law Center. I represent Ms. Davis in this case today. Ultimately, it is hard to admit mistakes in life. It's easier to double down, but foundation, Your Honors, is key. You cannot build on a shaky foundation. So what I'm going to give Your Honors today is three different reasons that you should rule for the appellant in this case. Either you may find that the district court erred right at the outset in failing to do its duty to ensure that the witness laid a proper foundation for the documents that would otherwise be interpreted, Section 6.10 of the Forward Flow Agreement, which contained an express ban on arbitration. Thirdly, Your Honors, may find that the court improperly ignored the Ross antitrust litigation decision. So there are a number of ways that you can get to the same conclusion, which is that the defendants, sorry, the appellant, the appellees in this case, never had the right to compel arbitration. Could you start by addressing the question of this declaration purportedly under Section 98 was not actually filed and used in the court. It was just sent to you. How were you injured by having that sent to you? Thank you, Your Honor. So it seems as if you're asking about essentially the standing argument that the appellees made. So hopefully I don't forget anything. We did address this pretty in depth in the reply brief, page 9-11. But ultimately, the standing argument happens because we cite a case I think called Motsen v. U.S. In all of these consumer protection cases that regulate the behavior of debt collectors, the debt collector's violation is complete when the debt collector sends the offending document. It's not about whether the consumer even receives it. It's not about whether the consumer is misled by it. There are cases, for example, where a debt collector sent a violative notice to a blind consumer, and the court said, even though the consumer didn't see it, because this consumer protection statute is meant to regulate the collector, the behavior of the debt collector, then that is what matters. So at the moment they served the declaration, they were in violation. It doesn't matter that they did not use it. I mean, just assume for a moment that I don't think those cases are consistent with the more recent guidance from the Supreme Court in Spokeo, and that there has to be some injury suffered by the plaintiff. What was the injury here? Well, Your Honor, we addressed the Spokeo thing again with, I think, something like a 30-case string cite, Your Honor. Ultimately, when you have these consumer protection statutes, what courts have found, I believe we cite the Byrne case and the Linehan case, what courts have found is that when a debt collector sends a statement to the consumer to not receive misleading and violative communications from debt collectors, the debt collector, in doing so, infringes upon that right, and that is your injury. Well, but I mean, most of the time, I mean, they send you a misleading statement that says, you better give us the money or else we'll do something to you that we're not actually allowed to do under state law, and it's misleading because they don't tell you that, but that induces the consumer to pay money they otherwise would not have paid or to do something. But so there is most of the time some concrete injury other than the mere violation, and I guess I'm wondering, do you have any concrete injury here that you can point to? Well, and again, Your Honor, I would state that the authorities that we cite in our reply brief make pretty clear that in violating the rights to not receive these notices, Your Honor's point, Your Honor's example, is but a small subset of the kinds of violations that can occur. These kinds of consumer protection laws do not require actual damages for there to be an injury, for example. It doesn't require that the consumer actually act on it because, again, it's not about the effect on the consumer as much as the consumer's inherent right to not receive certain kinds of communications from debt collectors. Short of reading my reply brief to you— Can I just expand a little bit? So this is a putative class action? Correct, Your Honor. Okay. So just looking at the scope of possible injuries to potential class members, can you articulate scenarios where there might be monetary damages? Okay. Well, so first of all, Your Honor, these are statutory damage cases. So if there is a violation, then statutory damages are available. It need not be actual damages. However, one of the major things that occurs and what the problem is with these is that they affect, in a sense, the consumer, who is usually in scenarios like this a defendant in a collection action. They may affect the consumer's settlement position. They may induce the consumer to waive certain valid objections or defenses. And in some cases, the entire point of these declarations is to get a judgment, a judgment without the basis of testimony. The point of these declarations is to do trial by declaration in contravention of the, what's it called, the exception that even allows these declarations to begin with, Your Honors. And it's now clear from the California Supreme Court that this one is not, doesn't comply with the statute. We know that now. Maybe we did or maybe we didn't know it at the time that it was sent. If we were to believe that in order for there to be standing for Ms. Davis in this case, there had to be some adverse effect on her, that is to say some effect on her behavior because of the sending of this declaration, you're saying that there was some? Well, if I'm interpreting your question, if Your Honors are asking me whether Ms. Davis suffered any pecuniary loss? No, I'm asking whether there was some alteration of her behavior on account of her having received this declaration. I don't know that I can say that, Your Honor. The damage that we point to is the damage that the legislature set forth, which is if But I thought you told me in your reply brief, and maybe you told me standing here, that in fact it induced her to get a lawyer and to do various things. Are you backing away from that? I am not, Your Honor. But what I'm trying to say is because ultimately the offending communication was not used and because she did get a lawyer who understood that the declaration was botched, then ultimately she was protected. But the fact remains that she ultimately did get a lawyer and they did violate the statute. Do you know when she retained a lawyer? Because the lawsuit against her was filed in April, I think it was, and the declaration wasn't sent to her until fairly shortly before trial. Which is when it occurs, Your Honors. And I don't have the timeline of that with me. I could submit it if Your Honors feel it necessary to the disposition of this case. But I don't have it committed to memory. Well, I'm just suggesting that the chronology, if she already had a lawyer, then obviously it couldn't have induced her to retain a lawyer. And perhaps, Your Honors, but I do think that we — the standing issue is, in my opinion, well settled, Your Honors, based on the validity of authorities that we have submitted with the reply brief. Honestly, this is not an issue that I expected would cause the Court a great deal of heartache. FDCPA cases and statutory damages cases like this, everyone rushed out after Spokao to try to say, aha, no concrete injury. And all the courts that have looked at it have said, no, no, no. Even if there is no pecuniary damage, even if it doesn't necessarily affect the consumer's behavior directly, there is still this — I don't want to say in Kuwait, but there is still this right that the consumer has not to receive these offending and misleading communications. I mean, all of the courts, you know, except the Sixth Circuit in Lychee where they said, you know, communicating a misstatement about state procedural rules in the context of litigation is not a basis for standing. I get it, Your Honor. And thank you for that. I think I see where the Court is now. And this is, again — this is another tact that debt collector defendants use. The ultimate issue here is not about the violation of state law, per se. It's not that the violation of state law automatically, you know, caused this FDCPA violation. As we discussed somewhere in the reply and brief, but I'm sorry I did not make a note of where, the issue is — and we cite the Kimber case. The issue here is that the declaration is misleading, and that's why it violates the FDCPA. It's not about the fact that the declaration violates state law. It both violates state law and the FDCPA because it's misleading. It's not just about some sort of negligible violation that does not contain a misrepresentation. Can I just say something? So here, the debt collector used this declaration procedure that was clearly not permitted because the declarant didn't reside within 150 miles, right? Correct. And that declaration had the amount of the debt and requested collection, right? Presumably, yes, Your Honor. Correct. It said the amount, didn't it, in the declaration? It did? Yes, Your Honor. Okay. So if I understand what you're saying, I think what you're saying is that when you send someone an improper communication that, by hyperbole, might be, you know, we're going to come take your house tomorrow if you don't pay this money, that there is some level of presumption of harm because people are going to change their behavior or react in a certain way. In some cases, they might hire a lawyer. In some cases, they might go try to pay. In some cases, they might try to borrow money from their uncle. They might try to do all sorts of things. Is that the kind of harm that you're talking about? Not in this particular case, Your Honor. And as I think I said before, your example is but one example. It's an egregious example, but it is not the universe of behavior that the Consumer Protection Statute seeks to remedy. Which is just to have sort of clean debt collection practices? Correct, Your Honor. And I did explain how, in some cases, these statements do end up harming consumers in more specific ways than just the violation of their right not to be misled by debt collectors. But it's not, that is not the universe of harm, Your Honors. And again, this is a Consumer Protection Statute which should be liberally construed to protect consumers and regulate debt collector behavior. May I proceed? Please proceed. Yes. So as I was stating, Your Honor, or you may find that the court wrongly interpreted Section 6.10. This is, I've not been doing this for very long, but this is the most interesting result, I will say, that I've ever had. I've talked to many, just lay people, friends of mine, my wife, about, you know, this section that says buyers shall not use arbitration in connection with the accounts or otherwise. And said, what do you think that means? Do you think that means they can use arbitration? And the saying is always, no, of course not. And so we had this very convoluted effort by the district court on reconsideration to insert words and make implications and ignore just the plain text. And then, finally, we discovered the why. And the why is the Ross case. The facts here are not in dispute. If you read the opposition, the opening brief from the appellees, they do not dispute the Ross decision. They don't dispute the words of the assignment agreement. The only thing they say is, well, you didn't do this and you didn't do this. And, well, I do need to reserve some time. But the basic idea is that, here, the appellant is being punished by being forced to arbitrate when there is no right to arbitrate for failing to discover something that the appellees should have known and should have revealed to the court. And what I'll do, Your Honors, I'll reserve the balance of my time for any rebuttal. Thank you. Thank you. Good morning, Your Honors. My name is Nicole Strickler, and I represent the appellees. May it please the Court. Counsel. Appellant, in this matter, has tried to avoid the arbitration process on numerous occasions in both the district court and when we were actually in the arbitration. And I think the record is clear that each time arbitration was compelled and compelled properly. We contend that the district court and the arbitrator's decision was correct when asked that you affirm today. But you also said in your brief that there was a lack of standing, which would not be a basis for affirming. It would be a basis for, if the district court didn't have jurisdiction, it should not have compelled arbitration. It should have dismissed it. And I think the appropriate disposition from us would be to direct the vacater of the district court's decision so you would be left without the arbitration award and you're back to square one. And I would be okay with either of those, in all honesty. I do think the standing issue is quite interesting, and because you focus a lot of your questions, I will address that first. And I'd like to say that I understand, of course, that Article III standing is not a waivable defect, but you're a little late to the party, too. I may be a little late to the party. This is the first time we hear about an Article III standing in your brief to us. You never mentioned it in the district court. How come? That's true, Your Honor, and that's really because the case law and the jurisprudence on standing post-spokio has really raised these issues and made them more prominent. I don't like these cases when Article III standing is raised to us for the first time for two reasons. Sometimes there's a factual record that would support standing that wasn't made in the district court because the objection to standing was never raised, so the plaintiffs were never put to their proof as to, okay, what's the harm? The second one is I would like to have had some briefing in the lower court, some opinion from the district court on the question, because it's much easier for us to avoid mistakes if we've got an earlier consideration by a judge on the same point. Now, having said that, I'm not convinced that spokio is relevant here. What happened in spokio is that there was an inaccuracy in the credit report, and the court said, well, you've got to show that there's some harm coming from the inaccuracy in the credit report. It was not a collection case. Correct. We've got a lot of collection cases where we have statutory damages that flow simply from the fact of the misrepresentation. So it's those cases that seem to me that you've got to get yourself out from under, and there's not a lot of briefing on those cases as the case comes to us right now. Understood, Your Honor. I think there's a couple points, though, that I don't think are really undisputed. One is there's no factual misrepresentation contained in the declaration at issue. But as it turns out, there's a clear error of law. That is to say that the declaration that was promised is not permissible under California law. I wouldn't necessarily say it's not permissible. I would say that it – Have you read the California Supreme Court cases on the point now? I certainly have, and I realize it would not be something that you would be able to introduce at trial, that declaration, which would essentially mean that it's insufficient from what I would say But the communication with the debtor strongly suggests that it will be. I don't think it does. I think if you look at the declaration in the record, all it does is state certain facts, all of which are true. So it doesn't say anything to the debtor about the legal effect of the declaration or how it's intended to be used. No, as soon as the service of process refers to that point, it's very clear what's going to happen. I don't think it's clear what's going to happen to the least sophisticated consumer. It's very clear as what the debt collector says can happen and might well happen. Just by service of process? Is that the contention? Well, and it's the reference to the statutory section. The reference to that. I don't know. I think that's kind of a leap under the standard under which it has to be reviewed, is when you review the communications, it has to be the least sophisticated consumer. So are we then to assume that the least sophisticated consumer is going to then go into the California Code of Civil Procedure and take a look and see what that means and make a determination as to whether it's valid or not? I kind of compare it to a situation where let's say I have an affidavit in support of a motion for summary judgment. Every single fact in that affidavit is correct, 100%. There is no misstatement. However, but for some evidentiary rule, I have failed to get it notarized or something to that effect, and thus it ends up being inadmissible. Have I then made a materially misstating statement to the consumer? I think what we're really comparing it to is how a lawyer would view it, and I don't think that's the correct standard. And that's why I say in this particular case there really was no risk of harm just because ultimately it would not have been considered to be admissible in court. Do you, by the way, know the answer to the factual question of was she already represented by counsel at the time this was sent? I don't know the answer. I apologize. I don't know that we would really know. They represent, I'm sorry, opposing counsel represented her in the underlying collection action, and he would know, not me. Well, and one of the reasons you don't know is you didn't raise the standing question in the district court. That's true. I don't dispute that whatsoever. But I think if you do look at, I don't think you can make the conclusion that every single district court to ever look at this issue has decided that standing is present under the Fair Debt Collection Practices Act, and thus that ends the inquiry. And I feel that that's my opponent's argument. Here, I just don't think it takes place. What I think you have to look at is actual facts, as Your Honor mentioned. And here, the declaration was never even used at trial, period. I mean, you know, we do have the stipulations that were affected to in the arbitration, which were clear that it was not used at trial. She never attempted to serve anybody at the address. And so essentially, there was absolutely no result of this declaration whatsoever that occurred. And I think that's important when Your Honors are considering this from the standing perspective, that those facts are in our record before us today. Putting the standing issue aside, I think that Appellant has several other problems with his appeal. Number one, I believe that in taking the position that essentially the evidentiary arguments that they're making, number one, to begin, they didn't follow the Northern District of California local rules relative to objecting to our evidence. And so I think the case law here is clear in the Ninth Circuit because they did not object in the underlying proceeding. They have waived those objections, period. Now, I recall in their reply brief, they retort, well, yes, but it just wasn't admissible in the first place.  And so I don't think it's up to this Court to thus go through and, you know, re-adjudicate the evidentiary issues or the evidentiary documents in this case. I will also state that throughout the underlying proceeding in the arbitration, they have stipulated that CACH is the successor in interest to HSBC Capital One. And so these are really non-issues at this point in this case. The second point that they make in their briefing is regarding the forward flow agreement. I think we adequately set out these arguments in our response brief, which, you know, number one, I think they're applying the wrong law. It's Virginia law. And the Virginia law that was applied is not an arbitrary determination because HSBC had its principal office in Virginia at the time of the contract. So I think if you look at the principles in which you're supposed to interpret those particular provisions, it's clear that arbitration was not waived by virtue of the provision that they're ‑‑ It's not so much ‑‑ I'm not sure it's quite right to characterize it as whether you waived arbitration. You would have no right to arbitrate at all except to the extent that you purchased it when you purchased these accounts. And so the question is, was a right to arbitrate conveyed to you? And when we look at the plain language of the relevant clause, otherwise in connection with the accounts is pretty broad and would seem on its face to cover this proceeding, which is certainly connected to the account. So why doesn't that apply? I understand that interpretation, but I think it's problematic for a couple reasons. If you read the entire agreement and not this particular section in isolation, including the exhibits, which is actually the bill of sale applicable to the account, which says all right, title, and interest in the account, it does not exempt the right. This is a contractual provision, which is why I said waiver, because I think perhaps that's a little bit of a stronger argument. But if you look at Virginia law and the way Virginia law looks at contracts, when there's a specific terminology here for collection of debt and then a more general term, it's supposed to be found that the more general term serves to modify the original more specific term so as not to make it superfluous. And so I think if you apply those principles as the district court did correctly, you come to the conclusion that the intent of that provision was not to exempt arbitration completely, but instead it was meant and intended so that if CACH or any subsequent purchaser would have tried to enforce the accounts in arbitration or any type of enforcement action relevant to the debt, that that was the intent of what was trying to be excluded. And I will say that as a practical matter as well, there was a large push to cease arbitration as being used in the collection of consumer debt during this particular time. That may be the intent, but that intent would have been accomplished simply for collection of debt, but adding the very broad or otherwise in connection with the accounts is hard to reconcile with that understanding of such a narrow intent. Well, I think, though, if you go back to how we cited the, I think they call it the Adjusum Generis rule, which I was completely unfamiliar with, admittedly, until I... Adjusum Generis. Adjusum Generis. There you go. And that's, you know, that goes back to what I said earlier about how when the general rules are used in a contract after specific terms, the general word's limited in their meaning and restricted in their meaning to things of a like kind in nature with those specified. And that's from the Golombuski case, which is a Virginia appellate court decision that we cited in our brief. You know, I think you could make the same logical argument as, okay, they said collection, why would they say anything else? Why didn't they just say never? You know, I think that's an equal assumption. So using that in addition to these other contractual principles, I think the district court got it right. If Capital One wanted to exclude arbitration from the rights it conveyed, I think it had to specifically state as such, which I don't think it did, and that's that Landmore case from Virginia from 2009. Additionally, they have raised a lot of objection. I also feel that I'll just briefly address their 60 v. 6 motion, which I think the district court correctly characterized as really a 60 v. 2 motion on the newly discovered evidence, which is relative to the Ross settlement. I do take issue with the conclusion of my opponent that we seem to agree that the Ross settlement applies. I argued throughout the district court that I thought there was insufficient evidence to show that the Ross settlement even applied, and the arbitrator ultimately found in the motion that the Ross settlement did not apply. So I don't want this court to believe that we believe it would apply under any circumstances, and I say that because the evidence was actually insufficient to show that any subsequent cardholder agreement or notice was actually ever sent to his client or any other consumer that would fall here that would have removed the arbitration clause. There's just simply nothing in the record about that as to whether that actually happened. So I wanted to get that point out as well. But I think regardless, their newly discovered evidence in a 60 v. 2 motion, it was untimely. It was not made within a year of the order. Even if you were to consider it as a 60 v. 6 motion, which I don't think would be appropriate, but if it would be considered that way, it was not brought within an appropriate time frame. They waited 11 months after having apparently discovered the settlement to bring it before the court in a motion. And I also don't think they can actually demonstrate actually injury as a result. So I just wanted to make that point on the Rule 60. That's all I have for your honors, unless there are other questions for me. Thank you. Thank you. Thank you, Your Honors. It feels like the time just goes by very quickly, so I urge Your Honors to read our briefing. I think we briefed the heck out of this, both on opening and reply. Just some quick hits regarding what my opponent has said here. There is, in fact, a factual misrepresentation in the 98 Declaration, as the Ninth Circuit itself has discovered. When the Declaration says that the declarant is available for service of process pursuant to 98, but they're not, that is a factual misrepresentation. Can I interrupt you for just a minute? Could you start the clock? There we go. Okay. Thank you, Your Honors. You just got some free seconds. I appreciate it very much. So ultimately, too, we've got to apply a little bit of common sense here. Do the appellees in this case expect us to believe, now that they say, well, the Declaration was completely true, do they expect us to believe that they sent a declaration that they themselves thought to be useless? I don't think so, Your Honor. It doesn't pass the smell test. Similarly, when discussing the effects on the consumer's behavior, I urge the Court to look at Reply Brief, page 10, the Kimber intergement cases, even though the effect of the 98 Declaration for this case is kind of irrelevant, given that we're talking about the arbitration. Local Rule 7 issue, we talked about on Reply Brief, page 11. Again, it's ultimately about is the document admissible? Does it have a foundation? And it doesn't. With regard to this idea that they could have exempted arbitration, they did. That is the clause. How else do you do a concrete ban on arbitration other than a clause that says, buyers shall not use arbitration? That was the exemption, Your Honor. So to say, well, if they wanted to, they could have, they did. And that's what we're talking about. Similarly, the courts, the district court's decision that talks about claims against the borrower, that's language the court invented and pulled out of thin air. And lastly, my opponent said that there is no subsequent agreement, and this is why we needed someone from the correct creditor. We needed a foundational witness because they would have said, by the way, this rusting happened. By the way, we sent out new agreements. And, by the way, this isn't the right one. Thank you, Your Honor.  Thank you. Thank you. Thank both sides for your arguments. Davis v. Mandarich Law Group et al. Submitted for decision.
judges: W. Fletcher, Miller, Pregerson